Defendant-appellant James Arnett pleaded guilty to ten counts of rape and one count of pandering obscenity. These charges involved the daughter of his live-in girlfriend. The trial court sentenced him to fifty-one years of incarceration: five years for each count of rape and one year for pandering obscenity, all to run consecutively.
At the sentencing hearing, the trial court explained its basis for Arnett's sentence. The court first referred to factors that might have favored a more lenient prison term. These factors included the fact that Arnett had himself been sexually abused as a child, that he had been diagnosed as a pedophile, and that evidence suggested that some sort of treatment program might be more beneficial to him than a lengthy term of incarceration.
On the other hand, the court stressed the factors that favored a harsher sentence, especially the heinousness of the offenses and the lasting harm that Arnett had caused the victim. The court compared Arnett's fifty-one year sentence to a twenty-year sentence that it had once given in a murder case. It suggested that Arnett's crime was worse than murder: "I thought in regards to a 20-year sentence, that individual, that victim, who's the victim of that case, at least is gone to their reward, they're not hurting anymore. But for [the victim here], the rest of her life, unless she takes care of herself, she's hurting."
Finally, the court explained that it had struggled to determine an appropriate sentence for Arnett. It pointed out that it had turned to the Bible for guidance:
 And in looking at the final part of my struggle with you, I finally answered my question late at night when I turned to one additional source to help me. * * *
 And that passage where I had the opportunity to look is Mathew [sic] 18:5, 6. "And whoso shall receive one such little child in my name, [sic] receiveth me. But, [sic] whoso shall offend one of these little ones which believe in me, it were better for him that a millstone were hanged about his neck, and that [sic] he were drowned in the depth of the sea."[1]
 Pandering obscenity count, one year. Ten counts of rape, five years on each, running consecutive. Sentence, 51 years.
 Mr. Arnett, I hope God has mercy on you and the hell that you have created. Thank you.
Arnett now appeals his sentence and conviction, asserting three assignments of error.[2] In his first and second assignments, which we treat together, he challenges his sentence. His first assignment asserts that his sentence, in general, was improperly based on the trial judge's own religious beliefs. His second assignment specifically challenges the court's imposition of consecutive sentences for the various rape counts to which he pleaded guilty. He argues that the court failed to follow the statutory requirements for imposing consecutive sentences. We agree with both of these assignments.
Prior to Senate Bill 2, trial courts had virtually unlimited discretion when sentencing an offender. But now a court's discretion is limited by the various statutory factors it must consider.[3] We are constrained to follow the law as enacted by the legislature, even if we disagree with it. Under the Revised Code, the religious beliefs of the trial judge are not a statutory factor that may be considered.
Also, when a judge's personal religious views enter into a sentencing procedure, the constitutional rights of the offender may be violated. This happened in United States v. Bakker, a case decided by the United States Court of Appeals for the Fourth Circuit.[4] James Bakker, the high-profile preacher, was sentenced for mail fraud, wire fraud, and conspiracy arising from his activities as a television evangelist.[5] At sentencing, the trial judge stated, "[Bakker] had no thought whatever about his victims[,] and those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests."[6] The Fourth Circuit concluded that Bakker's due-process rights had been violated because the judge had impermissibly taken his own religious values into account in sentencing.[7] It stated, "Courts * * * cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it."[8]
We agree with the Fourth Circuit. Although not all religious comments during sentencing are impermissible,[9] we agree that a court can not use religion as a factor in imposing a sentence.[10]
By factoring in religion, the court is acting outside of Ohio's sentencing guidelines, as well as violating the offender's due-process rights. We understand that the dissent here agrees with this statement of the law, but disagrees that this case rises to the level of reversible error. But we believe, based on our reading of the record, that our conclusion is inescapable.
Here, a review of the sentencing hearing reveals that the court impermissibly factored religion into Arnett's sentence. After first considering factors favoring leniency, and then considering factors favoring a harsher sentence, the court explicitly stated that it turned to an "additional source" — the Bible — to resolve its "struggle" in determining an appropriate sentence. It was as if the court used the Bible as a "tiebreaker" in its struggle of determining if Arnett's sentence should be harsh or lenient.
Apparently, the passage quoted by the court, with its reference to drowning an offender by hanging a millstone around his neck, convinced the court to impose what it considered to be a harsh sentence — one that was significantly longer than the twenty-year murder sentence that the court discussed at the sentencing hearing. Considering the heavy influence that religion had in guiding the court's decision, we sustain Arnett's first and second assignments.
We understand that our decision may be misconstrued or interpreted as somehow hostile to religion. Not so.[11] We stress that this case is unusual in that a specific text in the Christian Bible was the determining factor in the judge's imposition of punishment.
In Arnett's third assignment, he asserts that the trial court erred in accepting his guilty pleas to the counts of rape, because the court failed to inform him that his sentences for these counts might run consecutively. Under Crim.R. 11 (C)(2), a trial court is required to advise a defendant of certain consequences of a guilty plea. But the Ohio Supreme Court has clearly stated, "Failure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11 (C)(2), and does not render the plea involuntary."[12] Thus, we reject Arnett's third assignment.
We affirm the trial court's adjudication of guilt based upon its acceptance of Arnett's guilty pleas, but we vacate Arnett's sentence and remand this case for resentencing.
Judgment affirmed in part and vacated in part, and causeremanded.
DOAN, P.J., concurs.
HILDEBRANDT, J., dissents.
[1] We must quote from the trial transcript, which is not entirely consistent with the Bible, King James Version. The notation"sic" indicates instances where words should have been italicized and where commas should not have been added. We assume that the court reporter added these errors and that the judge read the passage correctly.
[2] We have sua sponte removed this case from the accelerated calendar.
[3] See R.C. 2929.11 through 2929.14; State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605, unreported.
[4] United States v. Bakker (C.A.4, 1991), 925 F.2d 728.
[5] Id. at 731-732.
[6] Id. at 740.
[7] Id. at 740-741.
[8] Id. at 740.
[9] See id. ("a judge can lecture a defendant as a lesson to that defendant and as a deterrent to others"); Gordon v. Vose
(D.R.I. 1995), 879 F. Supp. 179, 184 (permitting the statement "no man should take more than he is willing to give").
[10] See State v. Lundgren (Sept. 14, 1993), Lake App. Nos. 90-L-15-140 and 91-L-036, unreported, affirmed (1995), 73 Ohio St.3d 474, 653 N.E.2d 304 (discussing Bakker).
[11] See State v. Singh (1996), 117 Ohio App.3d 381,387,690 N.E.2d 917, 921 (Painter, J., concurring) ("Free expression of religion has been a cornerstone of the inalienable rights of Americans even as the religiously persecuted separatist Puritan Pilgrims reached Plymouth Rock in 1620, as states such as Rhode Island were established solely as a haven for those persecuted for their religious beliefs, as religious freedom was established in Section 14, Article I of the Northwest Ordinance of 1787, all well before the Free Exercise Clause was formally set out in the First Amendment to the United States Constitution and Section 7, Article I of the Ohio Constitution.")
[12] State v. Johnson (1988), 40 Ohio St.3d 130, 532 N.E.2d 1295, syllabus, certiorari denied (1989), 489 U.S. 1098,109 S.Ct. 1574.